# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

ALEX BARR,

      Plaintiff,

    v.

BOARD OF REGENTS OF THE
UNIVERSITY SYSTEM OF GEORGIA; and
NICHOLAS SILBERG, individually and in his
official capacity as Department Head of Fine
Arts, Humanities and Wellness at Savannah
State University,

      Defendants.

CIVIL ACTION NO.: 4:17-cv-203

## O R D E R

On March 23, 2018, Plaintiff Alex Barr filed an Amended Complaint pursuant to 42

U.S.C. § 1981 alleging claims of race discrimination against Defendants stemming from his

employment as an instructor at Savannah State University.[1]  (Doc. 11.)  Presently before the

Court is Defendants' Motion to Dismiss, (doc. 12), to which Plaintiff filed a Response in

opposition, (doc. 13), and Defendants filed a Reply, (doc. 15).  Defendants move to dismiss

Plaintiff's case for lack of subject-matter jurisdiction and for failure to state a claim upon which

relief can be granted, arguing that Plaintiff's claims are insufficiently pleaded and are barred by

---

[1]  In his original complaint, Plaintiff did not name Nicholas Silberg as a defendant and proceeded only
against Defendant Board of Regents of the University System of Georgia.  (See Doc. 1.)  Defendant
moved to dismiss that complaint, (doc. 5), but rather than opposing the motion, Plaintiff sought leave to
file an amended complaint, which the Court granted over Defendant's opposition, (docs. 8–10).  Plaintiff
then named Nicholas Silberg as a Defendant in his Amended Complaint.  (See Doc. 11.)  However,
Plaintiff has yet to provide the Court with the requisite proof of service, or a waiver of service, as to
Defendant Silberg.  See Fed. R. Civ. P. 4(d)(4), (l).  In the Motion to Dismiss *sub judice*, (doc. 12),
Defendant Nicholas Silberg joins by special appearance, preserving all defenses as to service and personal
jurisdiction, because he has not yet been served with process in this case, (id. at p. 1 n.1).

the applicable statute of limitations as well as sovereign immunity. (Doc. 12.) Plaintiff contends his claims were timely filed and are not barred by sovereign immunity as to Defendant Silberg; to the extent his claims are not well-pleaded, Plaintiff seeks permission to amend. (Doc. 13.)

For the reasons set forth below, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion, (doc. 12), and **DISMISSES with prejudice** Plaintiff's claims against Defendant Board of Regents of the University System of Georgia ("BOR"). The Court **DIRECTS** the Clerk of Court to **TERMINATE** the BOR as a Defendant on the docket of this action. Further, the Court **DISMISSES with prejudice** Plaintiff's § 1981 claims against Defendant Silberg for failure to hire, rehire, or promote and for unequal pay regarding compensation for Fall 2015 as barred by the applicable statute of limitations, as well as his hostile work environment claim against Defendant Silberg for failure to state a claim upon which relief can be granted. The Court also **DISMISSES with prejudice** Plaintiff's retaliatory discharge claim stemming from the grievance letter Plaintiff submitted *after* Defendant Silberg failed to tender Plaintiff a contract and demanded Plaintiff's resignation. In addition, the Court **DISMISSES without prejudice and with leave to amend** Plaintiff's claim for disparate treatment in the terms and conditions of employment, regarding teaching accommodations, for failure to state a claim.

However, as explained below, Plaintiff's claim against Defendant Silberg for unequal pay regarding nonpayment of "overload" pay for the Fall 2014 semester shall remain pending before the Court. Additionally, Plaintiff's retaliatory discharge claim against Defendant Silberg stemming from the disparate treatment complaints which occurred prior to Defendant Silberg's adverse employment action shall remain pending before the Court. Accordingly, the Court **DENIES** Defendants' Motion as to these claims. In addition, the Court **GRANTS** Plaintiff leave

to file a second amended complaint for the reasons set forth below. Plaintiff may file a second amended complaint in the limited manner set forth below within **fourteen (14) days** from the date of this Order.

Further, given that Plaintiff has stated plausible Section 1981 unequal pay and retaliatory discharge claims against Defendant Silberg, the Court extends time for service. The Court **ORDERS** Plaintiff to properly effect service of process on Defendant Silberg within **thirty-five (35) days** from the date of this Order and to provide proof thereof.[2] The Court provides Plaintiff this amount of time for service so that Plaintiff will have time to first file his second amended complaint and then serve Defendant Silberg with that operative version of his complaint. Thus, if Plaintiff does intend to amend his complaint, he must *first* file the second amended complaint and *then* serve Defendant Silberg with the second amended complaint. Should Plaintiff fail to timely serve Defendant Silberg within this specified period, the Court will dismiss this action without prejudice pursuant to Federal Rule of Civil Procedure 4(m).

Lastly, the Court **DIRECTS** the Clerk of Court to **LIFT** the discovery stay imposed in this case and **ORDERS** the remaining parties to conduct a Rule 26(f) conference within **fourteen (14) days** from the filing of Defendant Silber's Answer and to file a Rule 26(f) Report

---

[2] Federal Rule of Civil Procedure 4(m) grants federal courts the discretion to "order that service be made within a specified time" if a defendant has not been timely served within ninety days after the complaint was filed. See also Lepone-Dempsey v. Carroll Cty. Comm'rs, 476 F.3d 1277, 1282 (11th Cir. 2007) ("Absent a showing of good cause, the district court has the discretion to extend the time for service of process." (citation omitted)). Based on the record before the Court, Plaintiff has yet to serve Defendant Silberg and his deadline for timely doing so has long since expired. However, Plaintiff timely served the BOR (a related party), his remaining claims against Defendant Silberg grow out of the same nucleus of facts as those claims against the BOR, and Defendant Silberg will not be unduly prejudiced by allowing additional time as he has participated in this action by special appearance. Thus, the Court finds it prudent to allow Plaintiff an extended period of time in which to serve Defendant Silberg.

within **seven (7) days** from the Rule 26(f) conference.[3]  Failure to comply with these directives may result in the dismissal of this action or striking of the answer.

## PLAINTIFF'S ALLEGATIONS[4]

On or about August 1, 2013, Plaintiff Alex Barr was hired by Defendants as an instructor at Savannah State University ("SSU") to teach critical thinking and communications courses. (Doc. 11, p. 4.)  During the 2013–2014 academic year, Plaintiff taught twelve hours of classes— a "full four-course" load—each semester for the Department of Liberal Arts.  (Id.)  Plaintiff had a separate employment contract for each semester of that academic year.  (Id.)  During the 2014– 2015 academic year Plaintiff served as an instructor in the Department of Fine Arts, Humanities, and Wellness, teaching an "overload" schedule of five three-hour classes for the Fall Semester but returned to teaching a four-course load for the Spring Semester.  (Id.)  By the end of Spring Semester 2015, Plaintiff had completed his second consecutive year as a full-time faculty member at SSU.  (Id.)  Over the course of these two years, Plaintiff received classroom performance reviews of "excellent" or "outstanding."  (Id.)

That following summer, in mid-June of 2015, Plaintiff discovered, per SSU's class roster, that he was slated to teach five classes in the upcoming Fall Semester.  (Id.)  Plaintiff had not agreed to teach an overload schedule; rather, Defendants had simply "assigned" this schedule to him.  (Id.)  Some two weeks later, however, Plaintiff was "locked out" of the SSU computer network, including his email account.  (Id.)  Plaintiff then became concerned that he had not actually been contracted by SSU to teach for the 2015–2016 academic year.  (Id.)  When Plaintiff

---

[3]  The Rule 26(f) Report shall conform to the language and format of Judge Baker's Rule 26(f) Report Form located on the Court's website [www.gasd.uscourts.gov](www.gasd.uscourts.gov) under "Forms" and "Judge Baker-Instructions and Forms."

[4]  The below recited facts are taken from Plaintiff's Amended Complaint and are accepted as true, as they must be at this stage.

had yet to receive a teaching contract by late July 2015, he began discussions with Defendant Silberg, his department chair and direct supervisor, about teaching the upcoming semester. (Id. at p. 5.) Plaintiff informed Defendant Silberg that he had not received a contract for Fall 2015, had not been paid his overload premium for the previous Fall Semester of 2014, and had been locked out of SSU's computer network.[5] (Id.) Defendant Silberg responded that, contrary to Plaintiff's understanding, overload pay was not available unless he taught *six* classes, a requirement Plaintiff considered "impossible" given his contemporaneous enrollment in a PhD program at SSU. (Id.) Nonetheless, with classes scheduled to begin Monday, August 10, 2015, and realizing that he was still not under contract, Plaintiff requested that he be offered an employment contract. (Id.)

By August 7, 2015, Plaintiff was still without an employment contract and SSU email access; he notified Defendant Silberg that he would not teach the next Monday unless he was put under contract for teaching the assigned overloaded schedule. (Id.) Instead of tendering Plaintiff his contract, however, Defendant Silberg demanded Plaintiff's resignation. (Id.) As result of Defendant Silberg's actions, Plaintiff submitted a grievance that was never responded to or referred for further review. (Id. at p. 6.) When Plaintiff refused to resign, he was removed from the teaching roster and terminated. (Id.)

Plaintiff states that he was the only black faculty member in his department, and he was the only faculty member in the department who was refused an employment contract and reasonable teaching accommodations. (Id.) Further, unlike his white counterparts, Plaintiff was the only faculty member asked to teach an overload schedule and the only faculty member not

---

[5] Plaintiff also states, somewhat contradictorily, that he "was paid for teaching a five-course overload during Fall Semester 2014." (Doc. 11, p. 4.) Construing these allegations in Plaintiff's favor, the Court infers that Plaintiff was paid for teaching but was denied any overload pay for that semester.

paid prior to agreeing to a new contract.  (Id.)  Defendants gave white employees "preferred terms and conditions [of employment] in order to succeed and achieve at their positions."  (Id.)  Plaintiff avers that he complained of this disparate treatment to Defendant Silberg and SSU, but those complaints went unaddressed.  (Id.)  After refusing to offer Plaintiff an employment contract, Defendants later replaced him with a white female instructor.  (Id.)

Based on these allegations, Plaintiff brings claims under § 1981 for racial discrimination in the making of a contract, retaliation, and disparate treatment in the terms and conditions of employment, including refusal to hire or promote, unequal pay, and hostile work environment. (Id. at p. 3.)  Plaintiff asserts each of these claims under a single count of civil rights violations prohibited by § 1981.  (Id. at pp. 3–7.)  As relief, Plaintiff seeks compensatory damages, punitive damages, an injunction against future civil rights violations, attorney's fees, and any other relief deemed just and appropriate by the Court.  (Id. at pp. 3, 7–8.)

## STANDARDS OF REVIEW

When a court has pending before it both a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack of subject matter jurisdiction and a Rule 12(b)(6) motion to dismiss for failure to state a claim, the generally preferable approach is to decide the jurisdictional issue first and then, if jurisdiction is found, to decide whether a claim has been stated.  Jones v. State, 725 F.2d 622, 623 (11th Cir. 1984).  Motions pursuant to Rule 12(b)(1) take one of two forms: a "facial attack" on subject matter jurisdiction based on the complaint's allegations taken as true or a "factual attack" based on evidentiary matters outside of the pleadings.  McElmurray v. Consol. Gov't of Augusta-Richmond Cty., 501 F.3d 1244, 1251 (11th Cir. 2007) (citation omitted)).  In the "factual attack" context, the court considers whether subject matter jurisdiction tangibly exists in fact, irrespective of the complaint's allegations, id., and is permitted to "consider

extrinsic evidence such as testimony and affidavits," <u>Morrison v. Amway Corp.</u>, 323 F.3d 920, 924 n.5 (11th Cir. 2003) (citation omitted). A "facial attack," however, merely requires the court "to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." <u>Lawrence v. Dunbar</u>, 919 F.2d 1525, 1529 (11th Cir. 1990) (alteration in original). Thus, on a "facial attack," courts are to proceed as if evaluating a Rule 12(b)(6) motion. <u>See</u> <u>McElmurray</u>, 501 F.3d at 1251.

Under a Rule 12(b)(6) motion to dismiss, a court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." <u>Belanger v. Salvation Army</u>, 556 F.3d 1153, 1155 (11th Cir. 2009) (citation omitted). "A complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" <u>Wooten v. Quicken Loans, Inc.</u>, 626 F.3d 1187, 1196 (11th Cir. 2010) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" does not suffice. <u>Ashcroft</u>, 556 U.S. at 678 (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." <u>Id.</u> (citation and internal quotations omitted). While a court must accept all factual allegations in a complaint as true, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements," are insufficient. Id. However, dismissal under Rule 12(b)(6) "on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." Boyd v. Warden, Holman Corr. Facility, 856 F.3d 853, 872 (11th Cir. 2017) (citation and internal quotations omitted).

## DISCUSSION

In their Motion to Dismiss, Defendants present three grounds for dismissal of Plaintiff's Complaint: (1) they level a "facial attack" on this Court's subject matter jurisdiction over Plaintiff's claims against Defendant BOR based on Eleventh Amendment sovereign immunity,[6] (doc. 12-1, pp. 5–6, 14–16); (2) they argue that Plaintiff's failure to hire, failure to promote, and unequal pay § 1981 claims, filed more than two years after his resignation, are time-barred because the statute of limitations applicable to those claims only provides two years to bring suit rather than four, (id. at pp. 5–10); and (3) they contend that Plaintiff fails to plead sufficient facts to support each of his discrimination claims, (id. at pp. 5, 10–14).

In his Response, Plaintiff argues that his § 1981 claims are not time-barred by the statute of limitations because they fall under the revised four-year statutory limit. (Doc. 13, pp. 3–4.) Plaintiff also contends that he properly sets forth plausible claims in his Amended Complaint, and in the event the Court finds to the contrary, he seeks leave to further amend. (Id. at pp. 4–5.) However, as to Defendants' sovereign immunity defense, Plaintiff acknowledges its applicability to the BOR but asserts that he "rectified" the issue by adding Defendant Silberg. (Id. at p. 5.) In

---

[6] Although Defendants do not clearly state as much, their sovereign immunity defense implicates the Court's subject matter jurisdiction. See Thomas v. U.S. Postal Service, 364 F. App'x 600, 601 n.3 (11th Cir. 2010) (per curiam) ("[A] dismissal on sovereign immunity grounds should be pursuant to Rule 12(b)(1) because no subject-matter jurisdiction exists." (citing Bennett v. United States, 102 F.3d 486, 488 n.1 (11th Cir. 1996))); see also Cantu Servs., Inc. v. Roberie, 535 F. App'x 342, 346 n.3 (5th Cir. 2013) (noting that dismissals based on sovereign immunity are generally pursuant to Rule 12(b)(1) but also recognizing, as the Supreme Court has, that Eleventh Amendment immunity has a "uniquely ambiguous character").

their Reply, Defendants press the statute of limitations defense, arguing that because Plaintiff "worked under a contract that automatically ended the employment relationship" and required renegotiation for another term of employment, his failure to hire, failure to promote, and unequal pay claims are subject to the two-year statute of limitations. (Doc. 15, pp. 2–3.) Defendants also urge that Plaintiff failed to "provide specific analysis" regarding the factual sufficiency of his claims as set forth in his Amended Complaint. (Id. at pp. 3–4.)

The parties' arguments raise several doctrines of law, each of which the Court addresses in turn. As explained below, the Court finds that the allegations Plaintiff levies in his Amended Complaint against Defendant Silberg, taken as true and construed in his favor, state a plausible § 1981 claim for unequal pay regarding nonpayment of "overload" pay. However, his claims against Defendant BOR are foreclosed by sovereign immunity and his § 1981 claims against Defendant Silberg for failure to hire, rehire, or promote and for unequal pay regarding the Fall 2015 employment contract are precluded by the applicable statute of limitations. As such, these claims shall be dismissed as a matter of law. In addition, Plaintiff's § 1981 claims for hostile work environment, disparate terms and conditions of employment, and retaliation are due to be dismissed for failure to state a claim upon which relief can be granted.

## I.      Dismissal of Defendant BOR Under Eleventh Amendment Immunity

Plaintiff brings claims of employment discrimination against Defendant BOR pursuant to 42 U.S.C. § 1981,[7] made actionable through 42 U.S.C. § 1983. (Doc. 11.) As an instrumentality of the State of Georgia, a suit against the BOR would be the same as a suit against the State of

---

[7]  Under Section 1981, as amended by Congress in the Civil Rights Act of 1991, "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . . as is enjoyed by white citizens," which "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a), (b) (1991).

Georgia itself. "The Eleventh Amendment insulates a state from suit brought by individuals in federal court unless the state either consents to suit or waives its Eleventh Amendment immunity." <u>Stevens v. Gay</u>, 864 F.2d 113, 114 (11th Cir. 1989) (footnote omitted) (citing <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 98–100 (1984)). A lawsuit against a state agency or employee in its official capacity is no different from a suit against a state itself; such a defendant is immune. <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989) (holding that the state and its "arms" are not "persons" amenable to suit under Section 1983); <u>see</u> <u>Butts v. County of Volusia</u>, 222 F.3d 891, 894 (11th Cir. 2000) ("[Section] 1983 contains the sole cause of action against state actors for violations of § 1981."); <u>see also</u> <u>Pittman v. Oregon</u>, 509 F.3d 1065, 1072 (9th Cir. 2007) (Under the <u>Will</u> Court's interpretation of the Eleventh Amendment, "actions against arms of the state under both § 1983 and § 1981 cannot be brought in *either* federal or state court, because the cause of action in § 1983 does not reach arms of the state." (emphasis in original)).

In enacting Section 1981, Congress did not abrogate a state's sovereign immunity from suit provided by the Eleventh Amendment. <u>Henry v. Fla. Bar</u>, 701 F. App'x 878, 881 (11th Cir. 2017) (per curiam) (citing, *inter alia*, <u>Sessions v. Rusk State Hosp.</u>, 648 F.2d 1066, 1069 (5th Cir. 1981) ("Unlike Title VII, Section 1981 contains no congressional waiver of the state's [E]leventh [A]mendment immunity."))[8] Likewise, Congress did not abrogate the "well-established immunities or defenses" provided by the Eleventh Amendment and common law when it enacted 42 U.S.C. § 1983, the statutory cause of action through which Plaintiff brings his

---

[8] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Section 1981 claims.[9]  Will, 491 U.S. at 67.  Arms or agencies of the state, such as the BOR, are

therefore immune from suit.  Nicholl v. Bd. of Regents of the Univ. Sys. of Ga., 706 F. App'x

493, 495 (11th Cir. 2017) (per curiam) ("The B[OR] is considered a state entity that is an arm of

the state of Georgia for purposes of the Eleventh Amendment, and, therefore, is entitled to

sovereign immunity, unless waived."); see also Lapides v. Bd. of Regents of Univ. Sys. of Ga.,

535 U.S. 613, 616–17 (2002) (addressing whether the BOR had waived its Eleventh Amendment

immunity in that specific case); Stroud v. McIntosh, 722 F.3d 1294, 1299 (11th Cir. 2013)

(characterizing the BOR as an arm of the state); Williams v. Bd. of Regents of Univ. Sys. of Ga.,

477 F.3d 1282, 1301–02 (11th Cir. 2007) ("Nor has . . . the B[OR] waived its Eleventh

Amendment immunity.").

Plaintiff has not shown that Defendant BOR has waived its sovereign immunity;[10]

indeed, Plaintiff appears to concede that the Eleventh Amendment precludes suit against the

BOR, (doc. 13, p. 5).  Thus, because the State of Georgia would be the real party in interest in a

suit against Defendant BOR, the Eleventh Amendment immunizes the BOR from suit, even as to

---

[9]  Defendants contend that Plaintiff failed to invoke Section 1983 in bringing this action.  (Doc. 12-1,
p. 15.)  Defendants are mistaken.  As plainly set forth on the first page of his Amended Complaint,
Plaintiff asserts his claims under "42 U.S.C. § 1981 and 42 U.S.C. § 1983."  (Doc. 11, p. 1.)  Moreover,
such a technical error in pleading has been deemed irrelevant by the Supreme Court of the United States
and the Eleventh Circuit.  See Johnson v. City of Shelby, 574 U.S. ___, ___, 135 S. Ct. 346, 346 (2014)
(per curiam) (summarily reversing the lower court's dismissal of a constitutional civil rights claim for the
plaintiffs' "failure to invoke [Section 1983] in their complaint," and explaining that the Federal Rules of
Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory
supporting the claim asserted"); King v. Butts County, 576 F. App'x 923, 931 (11th Cir. 2014) (per
curiam) (holding failure to expressly invoke § 1983 not a proper ground to dismiss the plaintiff's § 1981
claims).

[10]  "Under the Georgia Constitution, the state's sovereign immunity can be waived only 'by an Act of the
General Assembly which specifically provides that sovereign immunity is thereby waived and the extent
of such waiver.'"  McCall v. Dep't of Human Res., 176 F. Supp. 2d 1355, 1361 (M.D. Ga. 2001) (quoting
Ga. Const. art. I, § II, P IX(e)).  Although Georgia has waived its sovereign immunity in the manner and
to the extent provided by the State Tort Claims Act, it has not "waive[d] any immunity with respect to
actions brought in the courts of the United States."  Id. (quoting O.C.G.A. § 50-21-23(b)).

Plaintiff's request for injunctive relief.[11]  Accordingly, the Court **DISMISSES** Plaintiff's claims against Defendant BOR under Eleventh Amendment sovereign immunity.

## II.    42 U.S.C. § 1981 Discrimination Claims

Under Section 1981, as amended by Congress in the Civil Rights Act of 1991, "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a) (1991).  With its 1991 amendment, Congress broadly defined the term "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  Id. § 1981(b).  The addition of Section 1981(b) by Congress overturned the Supreme Court's decision in Patterson v. McLean Credit Union, which had narrowly construed the protective reach of Section 1981 to prohibit race discrimination "only [in] the formation of a contract, but not [in] problems that may arise later from the conditions of continuing employment."  491 U.S. 164, 176 (1989).  Prior to this amendment, courts were to apply the most analogous state statute of limitations to Section 1981 claims.  Goodman v. Lukens Steel Co., 482 U.S. 656, 661–62 (1987), *superseded by statute as stated in* Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 383 (2004).

In Jones v. R.R. Donnelley & Sons Co., however, the Supreme Court determined that Section 1981 claims made possible by the enactment of the Civil Rights Act of 1991 and

---

[11]  In Ex parte Young, the Supreme Court held that the Eleventh Amendment does not act as a bar against federal courts prospectively enjoining state officers from acting unconstitutionally or contrary to other federal law.  209 U.S. 123, 148–50 (1908).  While the Ex parte Young exception allows some suits against state officials, it "has no application in suits against the States and their agencies, which are barred regardless of the relief sought."  Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993).  Thus, even though the Ex parte Young doctrine allows suit for prospective injunctive relief, the Eleventh Amendment notwithstanding, this exception is inapplicable here as to the BOR, because Plaintiff is suing an entity of the state itself rather than a state officer in his or her official capacity.

§ 1981(b) are subject to the default four-year statute of limitations period for federal causes of action as set forth in 28 U.S.C. § 1658(a). 541 U.S. at 374–80. The <u>Jones</u> Court explained that, to the extent Congress created new causes of action not previously cognizable under Section 1981, such claims are subject to the four-year "catch-all" statute of limitations provided by § 1658(a). <u>Id.</u> at 380–83. However, for causes of action that existed before the enactment of § 1981(b), the practice of borrowing the relevant state statute of limitations still applies. <u>Edwards v. Nat'l Vision, Inc.</u>, 568 F. App'x 854, 860 (11th Cir. 2014) (per curiam) (citing 28 U.S.C. § 1658; <u>Jones</u>, 541 U.S. at 371). Thus, in Georgia, the state's two-year statute of limitations for personal injury torts controls those Section 1981 claims which existed prior to the 1991 amendment. <u>See</u> O.C.G.A. § 9-3-33; <u>Saunders v. Emory Healthcare, Inc.</u>, 360 F. App'x 110, 114 (11th Cir. 2010) (per curiam).

### A. What Statute of Limitations Applies to Plaintiff's Section 1981 Claims

In his Amended Complaint, Plaintiff sets forth five Section 1981 employment discrimination claims: (1) failure to hire, rehire, or promote; (2) unequal pay; (3) hostile work environment; (4) disparate treatment in the terms and conditions of employment; and (5) retaliation. (Doc. 11, pp. 3–7.) Plaintiff filed his claims on October 23, 2017, complaining of employment actions that began on or about August 1, 2013 and continued through August 2015.[12] (Docs. 1, 11.) Accordingly, any claim brought by Plaintiff that was actionable under Section 1981 prior to the 1991 amendment is foreclosed by O.C.G.A. § 9-3-33. Defendants contend that Plaintiff's claims for failure to hire, rehire, or promote and for unequal pay are subject to Georgia's two-year statute of limitations and are thus time barred. (Doc. 12-1, pp. 6–

---

[12] Given Defendant Silberg's special appearance in this matter, for purposes of this Order the Court assumes, without deciding, that Plaintiff's Amended Complaint relates back to the filing of his original pleading under Federal Rule of Civil Procedure 15(c).

10.)  Plaintiff responds by arguing that each of these claims was made possible by the 1991 amendment; thus, he concludes, they are subject to, and timely under, the four-year federal statute of limitations.  (Doc. 13, pp. 3–4.)  Defendants aver, in reply, that Plaintiff offers no compelling authority for this assertion.  (Doc. 15, pp. 2–3.)

### (1)    Failure to Hire, Rehire, or Promote[13]

In 1989, the Supreme Court concluded that Section 1981 "cover[ed] only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process."  Patterson, 491 U.S. at 179 (articulating the pre-1991 ambit of § 1981).  A failure to promote claim under Section 1981 was actionable only where a promotion rose "to the level of an opportunity for a new and distinct relation between the employee and employer."  Id. at 185 (citation omitted).  Thus, in the context of a new employment relationship, Section 1981 failure to promote claims were cognizable prior to the 1991 amendment and are governed by a two-year statute of limitations.  Edwards, 568 F. App'x at 860; Young v. Int'l Paper Co., No. CIV.A. 10-00179-CG-M, 2011 WL 3711210, at *4 (S.D. Ala. Aug. 24, 2011).

Likewise, a failure to hire or rehire claim brought under Section 1981 is also subject to the two-year statute of limitations.  See Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 970 n.35 (11th Cir. 2008) (upholding dismissal of failure to hire claims as precluded by two-year statute of limitations); see also Saunders, 360 F. App'x at 114 (same); Johnson-Harris v. AmQuip Cranes Rental, LLC, No. CIV.A. 14-767, 2015 WL 4113542, at *7 (E.D. Pa. July 8, 2015) ("Because a claim based on failure to hire (or, in this case, rehire) asserts a failure to enter

---

[13]  Courts routinely consider these claims together, where appropriate.  See, e.g., Garcia v. Pueblo Country Club, 299 F.3d 1233, 1238–39 (10th Cir. 2002).  Based on Plaintiff's allegations in his Amended Complaint, which highlight Defendants' refusal to rehire him but do not mention any facts regarding a possible promotion, the Court sees no meaningful distinction between these claims in the present case. (See Doc. 11, pp. 3–7.)

into a contract with a plaintiff, courts have routinely held that failure-to-hire claims would have been actionable under the pre–1991 version of Section 1981." (collecting cases)); <u>Burgess v. Cleco Corp.</u>, No. CIV.A. 11-1704, 2013 WL 673481, at *5 (W.D. La. Feb. 22, 2013) (§ 1981 failure to hire claim subject to state statue of limitations).

The allegations in Plaintiff's Amended Complaint make clear that his claims for failure to hire, rehire, or promote are subject Georgia's two-year statute of limitations, because they were cognizable under the pre-1991 version of Section 1981. Plaintiff alleges that he taught at SSU, during the 2013–2014 academic year, "pursuant to *separate contracts* for each semester." (Doc. 11, p. 4 (emphasis added).) Plaintiff again taught at SSU during the 2014–2015 academic year, but following the end of that academic period, Plaintiff was not "given his contract to teach for the 2015–2016 academic year." (<u>Id.</u>) "[R]ealizing that he had no contract . . . and with [] Fall Semester scheduled to begin August 10, [2015], Mr. Barr requested that he receive his employment contract." (<u>Id.</u> at p. 5.) However, "instead of tendering [Plaintiff] his contract, [Defendant] Silberg demanded his resignation." (<u>Id.</u> (section entitled "REFUSAL TO REHIRE MR. BARR").) Plaintiff states that unlike his white counterparts, he "was the only faculty member who was not paid prior to agreeing to *a new contract*." (<u>Id.</u> at p. 6 (emphasis added).)

By Plaintiff's own allegations, his previous teaching contract with Defendants expired at the end of the 2014–2015 academic year. Any future employment was contingent on Defendants "tendering," and Plaintiff receiving, a "new contract." As noted, Defendants "refus[ed] to rehire Mr. Barr." Moreover, Plaintiff shows that Defendants conditioned continued employment for subsequent academic periods on the creation of a "separate," distinct contractual relationship.[14]

---

[14] Although Plaintiff speaks of a "resignation," the balance of factual allegations in his Amended Complaint belie the conclusion that Plaintiff had a position from which to resign in August of 2015. (<u>See</u> Doc. 11.) "[W]hen reviewing a motion to dismiss, a court is not required to accept factual claims that are internally inconsistent." <u>McMahon v. City of Riviera Beach</u>, No. 08-80499-CIV, 2008 WL 4108051, at

Under <u>Patterson</u>, claims regarding discrimination in the creation of "a new and distinct relation between the employee and employer" were cognizable in § 1981 actions before the statute was amended in 1991. 491 U.S. at 185. The employment relationship described in Plaintiff's Amended Complaint was one built upon, indeed contingent upon, the parties entering into a new contract for each new academic period; the prior contractual relationship ceased to exist at the end of said period. As such, Defendants' failure to tender Plaintiff a contract for the 2015–2016 academic year contemplated a "new and distinct" employment relationship that would have been actionable under Section 1981 prior to the Civil Rights Act of 1991. Thus, any claims regarding discrimination in Defendants' decision to not rehire Plaintiff in August of 2015 must have been filed by August 2017. See <u>Saunders</u>, 360 F. App'x at 114.

Because Plaintiff did not file the instant suit within two years of Defendants' failure to rehire him, the Court concludes that Plaintiff's Section 1981 claims for failure to hire, rehire, or promote are time-barred and due to be dismissed. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as to these claims.

---

*3 (S.D. Fla. Aug. 28, 2008) (citation and internal quotations omitted). Thus, to the extent Plaintiff's "resignation" allegations imply that he was still under a contract of employment following the end of the 2014–2015 academic year, the Court disregards them.

Furthermore, in his Response, Plaintiff did not dispute Defendants' assertion that "Plaintiff's employment contract for the 2014–[20]15 Academic year came to its natural conclusion at the end of the school year and, thereafter, Defendant's and Plaintiff's obligations to each other ended," (doc. 12-1, p. 8); instead Plaintiff states, without any applicable legal support, that "claims of failure to hire[ and] failure to promote . . . were not allowed prior to the revision," (doc. 13, pp. 3–4 (citing <u>Jones</u>, 541 U.S. at 383; <u>Baker v. Birmingham Board of Education</u>, 531 F.3d 1336 (11th. Cir 2008))). The holding in <u>Jones</u> concerned "hostile work environment, wrongful termination, and failure-to-transfer claims," not failure to hire or promote claims. 541 U.S. at 383. As explained in <u>Patterson</u>, of course, discrimination claims predicated on hiring and promotion were actionable under Section 1981 prior to its amendment. See 491 U.S. at 176–79, 185–86. Plaintiff's cite to <u>Baker</u> is similarly unhelpful as that case concerned racial discrimination in the termination of an already-employed teacher, 531 F.3d at 1337–39, not an employer declining to rehire or tender a new contract.

16

### (2)    Unequal Pay

Whether an unequal pay claim is subject to the four-year statute of limitations period provided by 28 U.S.C. § 1658 or the two-year statute of limitations period provided by O.C.G.A. § 9-3-33 depends on the compensation alleged to have been discriminatorily made or refused. To the extent an unequal pay claim arises out of an employee's initial compensation, as determined during the formation of the employment contract, it is governed by the two-year statute of limitations.  Palmer v. Stewart Cty. Sch. Dist., 215 F. App'x 822, 824 (11th Cir. 2007) (per curiam).  On the other hand, to the extent an unequal pay claim arises out of an employer's subsequent compensation decisions, regarding an already employed individual, it is governed by the four-year statute of limitations.  Smith v. Trane U.S., Inc., No. 6:11-CV-36, 2011 WL 4944143, at *4–5 (S.D. Ga. Oct. 17, 2011); see Palmer, 215 F. App'x at 824 (finding unequal pay claim subject to two-year limitations period where the plaintiff "did not allege any wrongdoing regarding salary modifications").  In short, because discriminatory pay raises, cuts, or other modifications involve post-contract formation conduct that was not actionable under Section 1981 until the 1991 amendment, claims based on these discrete acts are subject to the four-year statute of limitations.

Although his Amended Complaint is not the model of clarity in this regard, Plaintiff seems to be stating both types of unequal pay claims.  As to an unequal pay claim alleging discrimination *after* entering into a contract with SSU, Plaintiff states that Defendants failed to remit "his overload pay for Fall Semester 2014." (Doc. 11, p. 5.)  Further, Plaintiff alleges that he "was the only faculty member who was not paid prior to agreeing to a new contract, while his white counterparts were not subject to the same treatment." (Id. at p. 6.)  To be sure, however, Plaintiff also states that he "was paid for teaching a five-course overload during Fall Semester

2014." (Id. at p. 4.) Construing these allegations in Plaintiff's favor, the Court infers that Defendants paid Plaintiff his base pay for Fall 2014 but denied him premium pay for teaching an overloaded schedule that semester, while still under contract, and continued to deny him this pay in a discriminatory manner. Because Plaintiff's unequal pay claim regarding "overload pay" for the Fall 2014 Semester concerns post-formation conduct, it is subject to the four-year statute of limitations and was thus timely filed.

As to an unequal pay claim alleging *initial* compensation discrimination in the making of Plaintiff's employment contract with SSU, Plaintiff states that Defendants refused to pay him "overload pay unless he taught six classes" for the Fall 2015 semester, despite Plaintiff contending that a five-class schedule qualified him for "overload pay." (Id. at p. 5.) Plaintiff states that "teaching a sixth class was impossible" due to his PhD program enrollment. (Id.) Further, Plaintiff alleges that he "was the only faculty member in the department who was asked to teach an 'overload' of courses, while his [w]hite counterparts were not subject to the same treatment." (Id. at p. 6.) Because this unequal pay claim concerns compensation discrimination in the negotiation, or attempted formation, of his employment contract for the 2015–2016 academic year, it is subject to the two-year statute of limitations and is time barred.

Accordingly, to the extent Plaintiff states an unequal pay claim based on Defendants offering discriminatory "overload pay" terms for the unexecuted 2015–2016 employment contract, his claim is due to be dismissed as untimely. However, Plaintiff timely filed his unequal pay claim regarding Defendants' discriminatory non-payment of "overload pay" under Plaintiff's Fall 2014 employment contract, as that type of claim was made actionable by the 1991 amendment to Section 1981. Therefore, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion to Dismiss as to these claims on the basis of the statute of limitations.

### B. Whether Plaintiff Plausibly States Section 1981 Claims

Having found that Plaintiff's claims for failure to hire, rehire, or promote and for unequal pay in the unexecuted 2015–2016 employment contract are precluded by the applicable statute of limitations, the Court next considers whether Plaintiff plausibly states his remaining Section 1981 claims. In his Amended Complaint, Plaintiff states the following timely-filed claims: (1) unequal pay regarding the unremitted "overload pay" under Plaintiff's employment contract for Fall 2014; (2) hostile work environment; (3) disparate treatment in the terms and conditions of employment; and (4) retaliation. (Doc. 11, pp. 3–7.) Defendants assert that Plaintiff fails to plead sufficient facts to support each of these Section 1981 claims. (Doc. 12-1, pp. 10–14.) In response, Plaintiff lets his Amended Complaint speak for itself, offering no explanation of his allegations nor any response to Defendants' arguments, and contends simply that he has stated plausible claims. (See Doc. 13, pp. 4–5.) Defendants counter that "Plaintiff's conclusory arguments do not shed light on how his Amended Complaint meets [the federal pleading] standard." (Doc. 15, p. 4.)

Although not quite a "shotgun" pleading,[15] Plaintiff's Amended Complaint is not a model of clarity with respect to his Section 1981 claims. Plaintiff sets forth a single count under Section 1981 and asserts each of his distinct claims thereunder. (Doc. 11, pp. 3–7.) Plaintiff then attempts to delineate each claim with its own heading, but he includes factual allegations relevant to his particular claims under two general headings—"DISCRIMINATION BASED ON MR. BARR'S RACE" and "VIOLATIONS OF EMPLOYMENT CONTRACTUAL RIGHTS"—without explicitly specifying that these facts are relevant to each of his claims. (See

---

[15] A "shotgun" pleading is one that "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts . . . contain irrelevant factual allegations and legal conclusions." Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002).

id.)  This method of complaint drafting is certainly not the most straightforward means of stating a claim.  However, because Plaintiff sets forth each of his supporting factual allegations for his Section 1981 claims under a single count[16] and because these allegations are drafted in a concise, intelligible fashion that allows the Court to discern which facts support which claims, the Court will consider his allegations in total when determining whether Plaintiff plausibly states any claim for relief under Section 1981.[17]

Additionally, in reviewing the sufficiency of Plaintiff's claims as pleaded in his Amended Complaint, the Court notes that Section 1981 employs "the same analytical framework" as Title VII discrimination claims.  Bryant v. Jones, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009).  As such, the Court's analysis borrows the appropriate legal standard under which to review Plaintiff's claims from Title VII case law where needed.

**(1)    Unequal Pay Claim (Nonpayment of "Overload" Pay from Fall 2014)**

To allege a prima facie unequal pay case under Section 1981, a plaintiff must assert that he held a position similar to that of a higher paid employee who is not a member of his protected class.  Crawford v. Carroll, 529 F.3d 961, 974–75 (11th Cir. 2008) (citing Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1019 (11th Cir. 1994)); see also Freeman v. Koch Foods of Ala., 777 F. Supp. 2d 1264, 1281 (M.D. Ala. 2011).  In turn, to allege he held a similar position, a plaintiff must point to a comparator and allege that he "shared the same type of tasks" as the comparator.

---

[16] Indeed, in one paragraph under "COUNT ONE," Plaintiff states that "Defendants subjected Mr. Barr to racial discrimination based on his race, [b]lack[,] and failed to hire and/or promote him, refused to hire him, subjected him to unequal pay and subjected him to a hostile work environment in violation of 42 U.S.C. § 1981.  (Doc. 11, p. 3.)  Plaintiff adds that "Defendants subjected Mr. Barr to unlawful racial discrimination, retaliation and disparate treatment in the terms and conditions of employment."  (Id.)  Plaintiff then follows his claims enumerations with twenty-four numbered paragraphs of factual allegations and concludes "[t]he above[-]referenced acts and omissions amount to unlawful discrimination against Mr. Barr in violation of 42 U.S.C. § 1981."  (Id. at pp. 4–6.)

[17] Moreover, Defendants did not seek a more definite statement of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(e).

Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1529 (11th Cir. 1992). The similarity of tasks must be such that the comparator is "nearly identical" to the plaintiff. Wilson v. B/E Aerospace, Inc., 976 F.3d 1079, 1091 (11th Cir. 2004).

As described above, Plaintiff alleges that around the time he became locked out of the SSU computer network, in July of 2015, he notified Defendant Silberg "that he had not received his overload pay for Fall Semester 2014" or his contract for the 2015–2016 academic year. (Doc. 11, p. 5.) By August 2015, Defendant Silberg refused to tender an employment contract for the upcoming year and demanded Plaintiff resign. (Id.) Plaintiff further alleges he "was the only faculty member who was not paid prior to agreeing to a new contract, while his white counterparts were not subject to the same treatment." (Id. at p. 6.)

These factual allegations support the inference that Plaintiff's fellow, white SSU faculty members were timely remitted their "overload pay" while Plaintiff was denied his Fall 2014 "overload pay" by Defendants until he agreed to a new contract. Although not as fully developed factually as this claim would need to be in order to survive summary judgment—for instance, Plaintiff does not allege that his white counterparts who were paid before agreeing to a new contract received this pay based on teaching the same type of overload schedule as he—a "complaint need not allege facts sufficient to make out a classic McDonnell Douglas[18] prima facie case" so long as it "provide[s] enough factual matter (taken as true) to suggest intentional

---

[18]  Under the McDonnell Douglas framework, "to establish a *prima facie* case [of discrimination], a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for his job; (3) he was subjected to an adverse employment action; and (4) his employer treated similarly-situated employees outside his class more favorably or replaced him with someone outside his class." MackMuhammad v. Cagle's Inc., 379 F. App'x 801, 804 (11th Cir. 2010) (per curiam); see also Davis v. Town of Lake Park, 245 F.3d 1232, 1246 (11th Cir. 2001) ("adverse employment action is an indispensable element"). The McDonnell Douglas framework gives courts an evidentiary standard, not a pleading requirement, by which to evaluate employment discrimination claims supported by circumstantial as opposed to direct evidence. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002) (discussing framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).

race discrimination." Davis, 516 F.3d at 974 (citations and internal quotations omitted). The facts alleged by Plaintiff regarding the lack of overload pay stemming from his 2014–2015 employment contract with SSU, as compared to his fellow white faculty members, "give[s D]efendants fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 556. Accordingly, Plaintiff states a claim upon which relief can be granted for unequal pay under Section 1981, and thus, the Court **DENIES** Defendants' Motion as to this claim.

### (2)    Hostile Work Environment Claim

To state a hostile work environment claim, a plaintiff needs to allege "that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)). Determining whether the subject harassment was sufficiently severe or pervasive involves "both an objective and subjective component." McCann v. Tillman, 526 F.3d 1370, 1378 (11th Cir. 2008). The harassing "behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceives to be abusive." Miller, 277 F.3d at 1275 (quotations and alterations omitted).

In his Amended Complaint, Plaintiff repeatedly makes the conclusory allegation that Defendants "subjected him to a hostile work environment," (e.g. doc. 11, p. 3), yet he offers no discernable supporting facts that speak of "intimidation, ridicule, and insult," Miller, 277 F.3d at 1275. Under his "HOSTILE WORK ENVIROMENT" heading, Plaintiff complains of a discrepancy he had with Defendant Silberg over the number of classes necessary to earn "overload pay" and the terms of possible employment for the upcoming academic year; he also

notes again that he remained locked out of the SSU computer network. (Doc. 11, p. 5.) In his Response to Defendants' Motion to Dismiss, Plaintiff explains that he "was subjected to [a] hostile work environment which began when [he] was locked of [sic] his email." (Doc. 13, p. 3.) Simply put, locking a former employee out of an employer's computer network, after that employee's contract for employment had expired, falls well short of a "hostile" work environment. Even putting aside the fact that Defendants appear to have had a legitimate reason to exclude Plaintiff from their computer network—he was no longer under contract—objectively speaking, this single act does not at all constitute "intimidation, ridicule, [or] insult," <u>Miller</u>, 277 F.3d at 1275. Moreover, it could hardly be characterized as "severe or pervasive" discriminatory harassment. <u>Id.</u>

Plaintiff, therefore, has failed to state a viable hostile work environment claim. <u>See</u> <u>Edwards v. Prime, Inc.</u>, 602 F.3d 1276, 1300 (11th Cir. 2010) (noting that employee must allege facts sufficient to satisfy the hostile work environment standard to survive dismissal). Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as to this claim.

### (3) Disparate Treatment in the Terms & Conditions of Employment Claim

Disparate treatment "can constitute illegal discrimination when 'an employer has treated a particular person less favorably than others because of a protected trait.'" <u>Uppal v. Hosp. Corp. of Am.</u>, 482 F. App'x 394, 396 (11th Cir. 2012) (per curiam) (quoting <u>Ricci v. DeStefano</u>, 557 U.S. 557, 577 (2009)). To state a claim for disparate treatment, a plaintiff does not have to allege facts sufficient to meet the <u>McDonnell Douglas</u> standard, but he must provide enough factual allegations to suggest intentional discrimination based on a protected trait. <u>Davis</u>, 516 F.3d at 974. The elements of a prima facie case nevertheless remain relevant a point of

reference.  Harney v. McCatur, Inc., No. CV-11-S-4103-NE, 2012 WL 2479630, at *4 (N.D. Ala. June 26, 2012) (citations omitted).

To that end, a plaintiff must point to an adverse employment action that either amounts to an "ultimate employment decision," such as a termination, failure to hire, or demotion, or a decision "of substantiality in the employment context." Crawford, 529 F.3d at 970 (citations omitted).  For "conduct falling short of an ultimate employment decision," the adverse action must, "in some substantial way, alter[] the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect[] his or her status as an employee." Id. (citation omitted).  More particularly, the action complained of must amount to "a *serious and material* change in the terms, conditions, or privileges of employment to show an adverse employment action." Id. at 970–71 (emphasis added) (citation and internal quotations omitted).

As already found above, Plaintiff's disparate treatment claim for failure to rehire is precluded by the applicable statute of limitations while his disparate treatment claim for unequal pay has been found actionable in one respect.  Here, the Court determines whether Plaintiff has stated a claim regarding disparate treatment in the other terms and conditions of his employment as detailed in his Amended Complaint.  Stripped of its legal conclusions and the factual allegations regarding Defendants' alleged discriminatory failure to rehire, unequal pay, and hostile work environment, Plaintiff's Amended Complaint raises two allegedly adverse employment actions: Defendants' failure to offer reasonable teaching accommodations and Defendants' requirement that Plaintiff teach an "overload" of courses.  (Doc. 11, p. 6.)  Plaintiff also makes the vague and conclusory allegation that "[w]hite employees were given preferred terms and conditions in order to succeed and achieve at their positions."  (Id.)  At best, based on

Plaintiff's allegations, the "preferred terms and conditions" given to white faculty members, but not Plaintiff, were "reasonable teaching accommodations" in the form of a more favorable teaching schedule. (See also id. at p. 5 (Plaintiff responded to Defendant Silberg "that while teaching a fifth class is considered an overload, teaching a sixth class [during Fall Semester 2015] was impossible, especially given that Mr. Barr was also enrolled in the PhD program at SSU.").) While Plaintiff does complain about Defendants' requirement that he teach six classes for Fall 2015, Plaintiff does not identify any other semester in which Defendants allegedly mandated discriminatory teaching schedules.[19] To the extent Plaintiff pleads disparate treatment based on the employment terms offered by Defendants in connection with the 2015–2016 academic year, this claim (as discussed in Section II.A.2, *supra*) is precluded by Georgia's two-year statute of limitations as it arises out of the attempted making of that contract and was actionable under the pre-1991 version of Section 1981. See Patterson, 491 U.S. at 176–78.

Plaintiff fails to state any other facts regarding discriminatory teaching accommodations, leaving Defendants and the Court to guess as to what those accommodations might in fact have been. Without any factual detail, Plaintiff's allegation about preferred teaching accommodations given to white faculty members is "an unadorned, the-defendant-unlawfully-harmed-me accusation" that does not pass muster under Rule 12(b)(6). Iqbal, 556 U.S. at 678. Stated differently, the bare allegation that white faculty members were offered reasonable teaching accommodations and preferred terms and conditions of employment amounts to little more than a legal conclusion. See, e.g., Uppal, 482 F. App'x at 396 (affirming dismissal of discrimination claims where the plaintiff "never once supplement[ed his conclusory] allegations of disparate

---

[19] Plaintiff does state that he taught an "overload schedule" during the Fall 2014 semester, but he does not make any claims regarding teaching accommodations; instead he claims unequal pay as discussed above. (See Doc. 11, pp. 4–5.)

treatment with any factual detail"); Jackson v. Bell South Telecomms., 372 F.3d 1250, 1274 (11th Cir. 2004) (affirming dismissal of race discrimination claims where "the plaintiffs' charges [were] wholly conclusory, generalized, and non-specific claims of disparate treatment"); Eason v. Evans Cty. Bd. of Comm'rs, No. 6:13-CV-41, 2013 WL 5674497, at *2 (S.D. Ga. Oct. 17, 2013) ("The allegation that the County accommodated disabled males is nothing more than a bare assertion that amounts to a 'formulaic recitation of the elements of a constitutional discrimination claim,' namely, that Defendants treated males similarly situated to Eason differently than her." (citation omitted)); Adams v. Lafayette Coll., No. CIV.A. 09-3008, 2009 WL 2777312, at *3 (E.D. Pa. Aug. 31, 2009) (granting dismissal where the plaintiff failed to plead a factual basis as to the different treatment alleged to have been discriminatory).

Accordingly, because Plaintiff does not plead facts identifying how similarly situated white faculty members were given more favorable treatment, the Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's claims of disparate treatment in the terms and conditions of his employment. However, because Plaintiff could remedy the pleading defects as to this claim with more specific allegations, the Court dismisses this claim **without prejudice and with leave to amend**.

### (4) Retaliation Claim

To plead a prima facie case of retaliation under Section 1981, a plaintiff must allege that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) there was some causal connection between the protected activity and the adverse employment action. Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008) (citation omitted). As to causation, a plaintiff's allegations "must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment

action." Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000) (citations omitted).

Plaintiff's retaliation claims proceed in two parts. First, Plaintiff alleges that, in response to Defendant Silberg demanding his resignation and refusing to rehire him, he submitted a grievance letter that was never responded to by SSU. (Doc. 11, pp. 5–6 ¶¶ 29–31.) Second, Plaintiff alleges that, prior to his being not rehired, he complained of disparate treatment to Defendant Silberg and SSU, but his complaints were never addressed and he was to resign. (Id. at p. 6 ¶¶ 38–40.) Defendants argue that Plaintiff's retaliation claim fails on the causation prong because "a careful review of the allegations in his [Amended C]omplaint reveal[s] that his alleged protected activity occurred '[i]n response to['] Silberg not tendering his contract and demanding his resignation." (Doc. 12-1, p. 14 (quoting Plaintiff's Amended Complaint) (third alteration in original).) As previously noted, Plaintiff does not specifically counter this argument in his Response. (See Doc. 13.) Although Plaintiff alleges he was "asked to resign" and "unlawfully" terminated after he engaged in protected activity—complaining of disparate treatment to Defendant Silberg and SSU—Plaintiff also alleges, as Defendants point out, that he "submitted a grievance letter" to SSU "[i]n response to" Defendant Silberg not tendering Plaintiff a contract and demanding his resignation. (Compare Doc. 11, pp. 5–6 ¶¶ 29–31 (contract not tendered and resignation demanded before grievance submitted), with id. at p. 6 ¶¶ 38–40 (asked to resign and terminated after complaining of disparate treatment).)

Based on these allegations, the Court finds that Plaintiff has plausibly stated a retaliatory discharge claim in one respect. To the extent Plaintiff alleges that Defendant Silberg demanded a resignation and terminated him following his complaints of disparate treatment, Plaintiff has stated a claim. (See id. at pp. 6–7 ¶¶ 38–40.) This allegation indicates that Plaintiff engaged in

27

protected activity prior to the subject adverse employment action, Defendants' failure to rehire him, and thus states a plausible claim. However, to the extent Plaintiff's retaliatory discharge claim stems from the grievance letter Plaintiff submitted *after* Defendant Silberg failed to tender Plaintiff a contract and demanded his resignation, Plaintiff cannot state a claim. See Brungart, 231 F.3d at 799 (requiring decision maker to have been aware of protected conduct at time of adverse action because "[a] decision maker cannot have been motivated to retaliate by something unknown to him.")

Accordingly, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion to Dismiss as to retaliation. The Court **DISMISSES with prejudice** Plaintiff's retaliatory discharge claim stemming from the grievance letter submitted *after* Defendant Silberg failed to tender him a contract and demanded his resignation. The Court **DENIES** Defendants' Motion as to Plaintiff's claim that Defendant Silberg discharged him in retaliation for his disparate treatment complaints that Plaintiff made *prior to* Defendant Silberg's adverse employment action. This claim shall remain pending before the Court.

## C.    Leave to Amend

To the extent the Court finds that Plaintiff's Section 1981 claims are due to be dismissed, he seeks leave to amend. (Doc. 13, p. 5.) Defendants do not indicate any opposition to his request in their Reply. (See Doc. 15.) For the reasons set forth below, the Court allows Plaintiff an additional opportunity to amend his Amended Complaint as to his claims regarding Defendant Silberg's alleged disparate treatment in teaching accommodations.

Rule 15(a) provides that a party "may amend its pleading once as a matter of course" either within twenty-one days after serving it or within twenty-one days after service of a required responsive pleading or motion. Fed. R. Civ. P. 15(a)(1). Once this time has passed, a

party "may amend its pleading only with the opposing party's written consent or the court's leave," which courts "should freely give . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "The thrust of Rule 15(a) is to allow parties to have their claims heard on the merits, and accordingly, district courts should liberally grant leave to amend when 'the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief.'" In re Engle Cases, 767 F.3d 1082, 1108 (11th Cir. 2014) (quoting Foman v. Davis, 371 U.S. 178, 182, (1962)). While leave to amend is generally freely given, it is by no means guaranteed. A court should not allow leave to amend "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." Id. at 1108–09 (quoting Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001)). Whether to grant leave is within the sound discretion of the trial court. Addington v. Farmer's Elevator Mut. Ins. Co., 650 F.2d 663, 666 (5th Cir. 1981).

As explained above, Plaintiff's claims against Defendant BOR are precluded by Eleventh Amendment sovereign immunity; any amendment as to the BOR would thus be futile. Likewise, Plaintiff's failure to hire, rehire, or promote claim is precluded by the applicable statute of limitations; therefore, any attempt to replead it would be futile. In addition, amendment of Plaintiff's claim that he "was subjected to [a] hostile work environment[,] which began when Mr. Barr was locked [out] of his email," (doc. 13, p. 3), would also be futile, because the only workplace events that occurred subsequent to the email lock out were Plaintiff not being paid "overload pay" for Fall Semester 2014 and contract negotiations with Defendant Silberg that resulted in Plaintiff not being rehired, (doc. 11, pp. 4–7). The pay discrepancy and contract negotiations simply do not amount to severe and pervasive "discriminatory intimidation, ridicule,

and insult." <u>Miller</u>, 277 F.3d at 1275. And because Plaintiff was no longer employed, or reemployed, by Defendant Silberg following his being locked out of the SSU computer system, Plaintiff cannot offer any facts that would support a hostile work environment claim given that he was never subjected to the SSU work environment again. Accordingly, the Court **DISMISSES with prejudice** Plaintiff's claims for failure to hire, rehire, or promote, for hostile work environment, and all claims against Defendant BOR, as any amendment of these claims would be futile. Similarly, the Court **DISMISSES with prejudice** Plaintiff's retaliatory discharge claim stemming from the grievance letter submitted *after* Defendant Silberg failed to tender Plaintiff a contract and demanded Plaintiff's resignation. Plaintiff cannot amend these claims that the Court has dismissed with prejudice.

Plaintiff's failure to adequately plead his disparate treatment in teaching accommodations claims, however, may not be fatal. In this case, construing Plaintiff's factual allegations in his favor suggests that this claim could be plausibly stated. Accordingly, the Court **GRANTS** Plaintiff leave to file a second amended complaint, within **fourteen (14) days** of the date of this Order. The Court grants Plaintiff leave to amend for the limited purpose of setting forth his surviving claims and detailing his claims of disparate teaching accommodations. However, the Court forewarns Plaintiff that he shall not name the BOR as a defendant as the Court has already dismissed that party from this action. Further, Plaintiff shall not reallege those claims that the Court has dismissed with prejudice in this Order. Moreover, Plaintiff may not add additional claims or name additional parties.

This is the final time the Court will give Plaintiff leave to amend his complaint. The Court has already granted Plaintiff leave to amend previously in this case, (doc. 10), and he will not be permitted a third bite at the amendment apple. Finally, if Plaintiff files a second amended

complaint, it will become the operative pleading in the case, <u>Lowery v. Ala. Power Co.</u>, 483 F.3d 1184, 1219 (11th Cir. 2007), and thus, it must include those claims and fact allegations found actionable by the Court here as well as all necessary components of a properly pleaded complaint. In other words, Plaintiff's second amended complaint should not refer to or incorporate by reference his prior complaints.

## CONCLUSION

Based on the foregoing, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion. (Doc. 12). The Court **DISMISSES with prejudice** Plaintiff's claims against Defendant Board of Regents of the University System of Georgia ("BOR"). The Court **DIRECTS** the Clerk of Court to **TERMINATE** the BOR as a Defendant on the docket of this action. Further, the Court **DISMISSES with prejudice** Plaintiff's § 1981 claims against Defendant Silberg for failure to hire, rehire, or promote and for unequal pay regarding compensation for Fall 2015, as they are barred by the applicable statute of limitations, as well as Plaintiff's hostile work environment claim for failure to state a claim upon which relief can be granted. The Court also **DISMISSES with prejudice** Plaintiff's putative claim for retaliatory discharge stemming from the grievance letter submitted *after* Defendant Silberg failed to tender him a contract and demanded his resignation. The Court **DISMISSES without prejudice** Plaintiff's claim for disparate treatment in the terms and conditions of employment, regarding teaching accommodations, for failure to state a claim.

However, the Court **DENIES** Defendant's Motion as to the following claims that were plausibly stated and remain pending before: (1) Plaintiff's claim against Defendant Silberg for unequal pay regarding nonpayment of "overload" pay for the Fall 2014 semester; (2) Plaintiff's claim against Defendant Silberg for retaliatory discharge alleging that Defendant Silberg

demanded a resignation and terminated Plaintiff following Plaintiff's complaints of disparate treatment. In addition, the Court **GRANTS** Plaintiff leave to file a second amended complaint in the limited manner set forth in Section II.C., *supra*, within **fourteen (14) days** from the date of this Order.

Given that Plaintiff has stated plausible Section 1981 claims against Defendant Silberg, the Court extends time for service and **ORDERS** Plaintiff to properly effect service of process on Defendant Silberg within **thirty-five (35) days** from the date of this Order and to provide proof thereof. If Plaintiff files a second amended complaint, he should *first* file his second amended complaint and *then* serve Defendant Silberg. Should Plaintiff fail to timely serve Defendant Silberg within this specified period, the Court will dismiss this action without prejudice pursuant to Federal Rule of Civil Procedure 4(m).

Lastly, the Court **DIRECTS** the Clerk of Court to **LIFT** the discovery stay imposed in this case. The Court **ORDERS** the remaining parties to conduct a Rule 26(f) conference within **fourteen (14) days** from the filing of Defendant Silberg's Answer and to file a Rule 26(f) Report within **seven days** from the Rule 26(f) conference.[20]

**SO ORDERED**, this 8th day of March, 2019.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[20] The Rule 26(f) Report shall conform to the language and format of Judge Baker's Rule 26(f) Report Form located on the Court's website www.gasd.uscourts.gov under "Forms" and "Judge Baker-Instructions and Forms."