## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

ALEX BARR,

       Plaintiff,

   v.

NICHOLAS SILBERG, individually and in his
official capacity as Department Head of Fine
Arts, Humanities, and Wellness at Savannah
State University,

       Defendant.

CIVIL ACTION NO. 4:17-cv-00203

### O R D E R

     This action arises out of, among other things, the alleged wrongful termination of Plaintiff

Alex Barr from his employment at Savannah State University ("SSU"). (Doc. 20.) Plaintiff sued

Nicholas Silberg ("Silberg"), a department chair at SSU, for alleged violations of 42 U.S.C. §

1981. (Id. at pp. 2–6.) He asserts Silberg treated him differently on account of his race in a variety

of ways, including not renewing his contract, and also that Silberg retaliated against him in

violation of the statute. (Id.) Presently before the Court is Silberg's Motion for Summary

Judgment. (Doc. 38.) Plaintiff has filed a Response to the Motion, (doc. 42), and Silberg has filed

a Reply, (doc. 45.) The Court finds that Plaintiff has not presented sufficient evidence for a

reasonable jury to find that Silberg intentionally discriminated against him on the basis of race or

that Silberg retaliated against him in violation of the statute. Thus, the Court **GRANTS** Silberg's

Motion for Summary Judgment. (Doc. 38.) The Court **DIRECTS** the Clerk of Court to enter

summary judgment in favor of Defendant and to **CLOSE** this case

## BACKGROUND

### I.    Plaintiff's First Two Years of Employment at SSU

Plaintiff is an African-American male who began working as a full-time temporary instructor at SSU in August 2013.  (Doc. 35, pp. 38–39, 157.)  At the end of that academic year, SSU offered him another contract to teach for the 2014–2015 school year in the Department of Fine Arts, Humanities, and Wellness.  (Id. at pp. 48–50, 61.)  During the 2015 spring semester, Plaintiff, for the first time, taught five courses.  (Id. at p. 62.)  Some other professors in his department taught five courses that semester as well.  (Id. at p. 63.)  Because he was teaching a fifth course for which some instructors in a different department received additional pay, Plaintiff spoke with Dr. Joan Maynor, the then-interim chair of the Department of Fine Arts, Humanities, and Wellness, about whether he would receive additional compensation.  (Id. at p. 64; doc. 38-4, pp. 31–32.)  Dr. Maynor informed Plaintiff that SSU's dean was aware that he and others would be teaching a fifth class, and that the school was "going to look into it to make sure that [instructors teaching a fifth class were] compensated"; she did not, however, tell him he would receive any specific additional pay for teaching a fifth class.  (Doc. 35, p. 64.)  Plaintiff acknowledges that according to the Temporary Full-Time Faculty Guide, teaching fifteen hours was a normal course load.  (Id. at p. 112.)  At the end of the spring 2015 semester, Dr. Maynor retired.  (Id. at pp. 91–92.)  Silberg replaced Maynor as Department Chair and as Plaintiff's supervisor in July 2015. (Doc. 38-4, p. 14.)

### II.    Plaintiff's Problems with Silberg

On July 15, 2015, Plaintiff had a conference with Silberg to discuss his teaching schedule for the fall 2015 semester.  (Doc. 35, pp. 121–22.)  During this meeting, Plaintiff assumed that he would teach four courses, although no one had specifically told him this.  (Id. at p. 121.)  Roughly

two weeks later, on July 30, 2015, Silberg contacted Plaintiff and told him he needed to make adjustments to the days and times that Plaintiff would teach in order to accommodate another instructor's schedule.  (Id. at p. 130.)

On August 1, 2015, Plaintiff noticed that his email account had been deactivated.  (Id. at pp. 134–35.)  On August 7, 2015, Plaintiff spoke with Silberg over the phone.  (Id. at pp. 147–48.) Plaintiff told Silberg about his deactivated email account and that he had not yet received a contract to teach for the upcoming school year.  (Id.)  According to Silberg, "[n]o one's contract was ready" at this time.  (Doc. 38-4, p. 56.)  Plaintiff had also learned at some point that he was assigned to teach five class and wanted additional compensation, but Silberg informed him that five courses was the standard workload for his position.  (Id. at pp. 58–59.)  Plaintiff informed Silberg that he would not teach when classes began unless he received an increase in pay due to his teaching five classes, along with a contract and email service.  (Doc. 35, p. 149; doc. 35-14, p. 3.)  In response, Silberg asked Plaintiff for his resignation.  (Doc. 35, pp. 148–49; doc. 38-4, p. 57.)

After the phone call, Plaintiff wrote a letter to Silberg.  (Doc. 35-15.)  In the letter, he again noted that he had not received a contract for the 2015–2016 academic year and that his email was not working.  (Id. at p. 1.)  He declined to offer his resignation and asked for a "review and audit of [his] personnel file" because he felt that he had "been disenfranchised."  (Id.)  Later in the letter, he stated that "[p]ositions and accommodations should not be tailored based upon race or gender. All employees within the department should be treated equally and given a fair opportunity to promote and excel. The lack of diverse faculty members is disheartening."  (Id. at p. 2.)  Plaintiff concluded the letter by requesting an investigation into his claims.  (Id.)

### III.     Other Teachers' Experiences at SSU

Plaintiff was not the only full-time temporary instructor in the Fine Arts, Humanities, and Wellness Department at SSU for the 2014–2015 academic year.  (Doc. 35, p. 156.)  Other instructors included Nancy Souifi, Christie Clougherty, and Marlene Seidman, all of whom are white females.  (Id. at p. 209.)  According to Plaintiff, none of these individuals experienced problems with their email accounts, and Silberg gave Seidman and Clougherty preference in scheduling courses and required them to teach only four courses.  (Id. at pp. 168, 170–71, 173–74.)  (Notably, both Seidman and Clougherty began teaching during the fall 2015 semester before receiving their contracts.  (Doc. 38-4, pp. 110–11.))  Souifi was permitted to adjust her teaching schedule because of a health condition.  (Doc. 35, p. 174.)

Silberg also gave Clougherty the opportunity to serve as the "coordinator of Humanities" as well as "a leadership role in schedules."  (Doc 35, pp. 170–71.)  At the time, Clougherty had taught at SSU for five years and had a doctorate degree.  (Doc. 38-4, p. 109.)  In addition, according to Plaintiff, Silberg discussed with others his plan to create two new positions that required qualifications tailored towards both Clougherty and Seidman's resumes.  (Doc. 35, pp. 217–18.)  This discussion occurred before Plaintiff wrote his August 7, 2015 letter to Silberg.  (Id. at p. 217.)  Plaintiff also testified that he does not know whether Silberg actually had the authority to create positions within the department.  (Id. at p. 132.)

### IV.     Procedural History

Plaintiff filed his Complaint initiating this suit against the Board of Regents of the University System of Georgia on October 23, 2017.  (Doc. 1.)  Plaintiff subsequently filed an Amended Complaint adding Silberg as a defendant, (doc. 11), and the Court later dismissed the Board of Regents of the University System of Georgia, (doc. 19).  Plaintiff then filed a Second

Amended Complaint.  (Doc. 20.)  Plaintiff alleges that Silberg violated 42 U.S.C. § 1981 by treating him differently on account of his race and by retaliating against him when he complained about his treatment.  (Id. at pp. 2–6.)  In addition to damages, he seeks attorney's fees and punitive damages.  (Id. at pp. 6–7.)  Silberg filed a Motion for Summary Judgment.  (Doc. 38.)  Plaintiff filed a Response challenging Silberg's Motion, (doc. 42), and Silberg filed a Reply, (doc. 45).

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law."  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial.  See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)).  If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist.  Anderson, 477 U.S. at 257.

5

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party.  Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)).  However, "facts must be viewed in the light most favorable to the non-moving party only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380 (2007).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Id. (citation and emphasis omitted).

## DISCUSSION

Plaintiff claims that Silberg violated Section 1981 by treating him differently in numerous ways because of his race and by retaliating against him when he complained about racial disparities in the workplace.  (Doc. 20, pp. 2–6.)  Silberg argues that Plaintiff cannot establish the prima facie elements for either of these claims.  (Doc. 38-1, pp. 5, 10.)  In addition, he argues that he is entitled to qualified immunity for the claims against him in his individual capacity.[1]  (Id. at pp. 14–18.)  For the following reasons the Court **GRANTS** Silberg's Motion for Summary Judgment.  (Doc. 38.)

---

[1] Plaintiff sued Silberg in both his individual and official capacities.  (Doc. 20, p. 1.)  In his official capacity, Silberg represents the Board of Regents of the University System of Georgia.  See Jude v. Morrison, 534 F. Supp. 2d 1365, 1368 (N.D. Ga. 2008) ("Suits against persons in their official capacity are actually suits against the governmental entity they represent.") (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)).  The Court has already determined that the Eleventh Amendment immunizes the Board of Regents from suit in this case.  (Doc. 10, pp. 9–12.)  For those same reasons, Silberg is immunized from suit when acting in his official capacity.  See Jackson v. Ga. Dep't of Transp., 16 F.3d 1573, 1575 (11th Cir. 1994) ("Under the Eleventh Amendment, state officials sued for damages in their official capacity are immune from suit in federal court.").  Thus, the Court **GRANTS** Silberg's Motion for Summary Judgment to the extent Plaintiff asserts claims against him in his official capacity.  (Doc. 38.)

## I.      Disparate Treatment Claim

Plaintiff's Second Amended Complaint asserts that Silberg violated Section 1981 by treating him differently in the workplace because of his race.  (Doc. 20, pp. 2–6.)  Under Section 1981, as amended by Congress in the Civil Rights Act of 1991, "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a) (1991).  A Section 1981 claim has the "same requirements of proof and use[s] the same analytical framework" as Title VII.  Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).  Under that framework, Plaintiff can show disparate treatment through either direct or circumstantial evidence.  See E.E.O.C. v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1286 (11th Cir. 2000).

Silberg argues that Plaintiff has no direct evidence of discrimination, and Plaintiff does not dispute this.  (Doc. 38-1, p. 4; doc. 42-2, p. 3.)  "Absent direct evidence, a plaintiff may prove intentional discrimination through the familiar McDonnell Douglas [burden shifting] paradigm for circumstantial evidence claims."  Joe's Stone Crab, 220 F.3d at 1286; see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800 (1973).  Under McDonnell Douglas, a plaintiff bears the initial burden of establishing a prima facie case of discrimination.  411 U.S. at 802.  Once the plaintiff makes this showing, a presumption of discrimination is created, and the burden shifts to the defendant to articulate "some legitimate, nondiscriminatory reason" for its actions.  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981) (citation omitted).  Finally, should the defendant satisfy this burden, "the plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination, an obligation that merges with the plaintiff's ultimate burden of persuading the factfinder that she has been the victim of intentional

discrimination." Lewis v. City of Union City, 918 F.3d 1213, 1221 (11th Cir. 2019) (en banc) (citation and internal quotation marks omitted).

To establish a prima facie case, a plaintiff must show: "(1) that [he] belongs to a protected class, (2) that [he] was subjected to an adverse employment action, (3) that [he] was qualified to perform the job in question, and (4) that [his] employer treated 'similarly situated' employees outside [his] class more favorably." Id. at 1220–21 (citations omitted). Here, Silberg does not dispute Plaintiff is a member of a protected class or that he was qualified to teach at SSU. (Doc. 38-1, pp. 5–6.) However, he argues that Plaintiff did not experience an adverse employment action and that he cannot point to any similarly situated employees whom Silberg treated more favorably than he treated Plaintiff. (Id. at p. 6.) The Court will first examine whether Silberg subjected Plaintiff to an adverse employment action. It will then turn to whether Plaintiff has provided sufficient comparator evidence.

### A.    Adverse Employment Action

"For disparate treatment, an adverse employment action must 'impact the "terms, conditions, or privileges" of the plaintiff's job in a real and demonstrable way.'" Minnifield v. City of Birmingham Dep't of Police, 791 F. App'x 86, 90 (11th Cir. 2019) (per curiam) (quoting Davis v. Town of Lake Park, 245 F.3d 1232, 1239 (11th Cir. 2001), *overruled on other grounds by* Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)). "Proof of 'direct economic consequences' is not required, but a plaintiff must show 'a serious and material change in the terms, conditions, or privileges of employment.'" Id. The change must be severe enough "that a reasonable person in the circumstances would find the employment action to be materially adverse." Jefferson v. Sewon Am., Inc., 891 F.3d 911, 921 (11th Cir. 2018) (citation and internal quotation omitted).

In his Response, Plaintiff says he suffered several adverse employment actions including losing email access, having to teach five classes, not getting his preferred class schedule, not being offered a leadership position, and not receiving a contract for the 2015-2016 academic year.[2] (Doc. 42-2, pp. 3–5.)  As an initial matter, Plaintiff explicitly admits that he has no evidence that Silberg was responsible for his loss of email access.  (Doc. 35, p. 136.)  Even if he could, Plaintiff provides no evidence to show why losing email access for a few weeks before the semester began would constitute an adverse employment action.  See, e.g., Head v. Pitts Enters., Inc., No. 1:09-cv-187-WHA, 2010 WL 2773376, at *14 (M.D. Ala. July 14, 2010) (plaintiff not receiving a radio to communicate inside a tractor trailer plant was not an adverse employment action).  Similarly, Plaintiff not receiving his preferred work schedule is not an adverse employment action.  See Clark v. S. Broward Hosp. Dist., 601 F. App'x 886, 893 (11th Cir. 2015) (doctor not getting her preferred shift preferences for a month did not constitute an adverse employment action); Recio v. Creighton Univ., 521 F.3d 934, 940 (8th Cir. 2008) (university requiring a professor to teach on a Monday, Wednesday, Friday schedule instead of a Tuesday, Thursday schedule was not an adverse employment action); Watts v. Kroger Co., 170 F.3d 505, 510 (5th Cir. 1999) ("Simply changing one's work schedule is not a change in her employment status.")  Finally, requiring that an employee perform extra work is not an adverse employment action, so Plaintiff having to teach

---

[2] In his Amended Complaint, Plaintiff also asserts that he received unequal pay as part of his disparate treatment claim.  (Doc. 20, pp. 4–5.)  Silberg argues that Plaintiff does not have direct or circumstantial evidence that he received unequal pay because of his race.  (Doc. 38-1, pp. 11–14.)  In his Response, Plaintiff does not respond to this argument or mention unequal pay at all.  Because Plaintiff failed to argue this claim, the Court considers it abandoned.  See McQueen v. Wells Fargo Home Mortg., 955 F. Supp. 2d 1256, 1273 (N.D. Ala. 2013) ("Since the plaintiff makes no attempt to argue that these are adverse employment actions, the court treats them as abandoned."); see also McMaster v. United States, 177 F.3d 936, 940–41 (11th Cir.1999) (claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint).  In addition, even if the Court considered this claim, it would fail as Plaintiff provides no evidence concerning the salary of his proffered comparators as explained in Discussion Section I.B n.4 infra.

five classes instead of four—particularly where there is evidence that others in Plaintiff's position had been required to do the same—does not satisfy this element.  See Tran v. The Boeing Co., 190 F. App'x 929, 934 n.3 (11th Cir. 2006) (per curiam) ("None of Plaintiff's other allegations [such as] receiving excess work . . . rise to the level of an adverse employment act."); Hudson v. Univ. of Ala. Healthcare Sys., 16-0026-WS-N, 2016 WL 4132274, at *3 (S.D. Ala. Aug. 3, 2016) (employer assigning an employee a double workload did not constitute an adverse employment action); cf. McCone v. Pitney Bowes, Inc., 582 F. App'x 798, 800 (11th Cir. 2014) ("[A]bsent unusual circumstances, [work assignment claims] typically do not constitute adverse employment actions."); Register v. Cleaver-Brooks, Inc., No. 7:13-CV-9 (HL), 2014 WL 3508101, at *7 n.8 (M.D. Ga. July 14, 2014) ("Title VII did not prohibit [defendant] from requiring [p]laintiff to perform extra work . . . .").

Plaintiff also provides evidence that Silberg did not promote him to "a leadership role" or to the "coordinator of Humanities" position and instead placed another employee in these roles. (Doc. 35, p. 171.)  The United States Court of Appeals for the Eleventh Circuit has noted that a failure to promote constitutes an adverse employment action when "the position [plaintiff] desired had a greater wage or salary, a more distinguishable title, or significantly more responsibilities." Weston-Brown v. Bank of Am. Corp., 167 F. App'x 76, 80 (11th Cir. 2006) (per curiam) (internal citation and quotation omitted).  Here, Plaintiff does not point to any evidence showing that these positions came with any increase in salary or a more distinguishable title.  Plaintiff's deposition indicates that the leadership position had some impact on scheduling but he provides no further evidence concerning job duties.  (Doc. 35, p. 171.)  In addition, the record is completely devoid of any evidence showing that these posts involved significantly more responsibilities.  For this reason,

the Court cannot find that Silberg denying Plaintiff these positions constituted an adverse employment action.

However, Plaintiff's remaining claim concerning Silberg's actions in telling him to tender his resignation does qualify as an adverse employment action. It is well established that the "failure to rehire [a] plaintiff was undoubtedly an adverse employment action." Payne v. McLemore's Wholesale & Retail Stores, 654 F.2d 1130, 1141 (5th Cir. Unit A Sept. 1981).[3] Plaintiff has put forward evidence that he did not receive a contract to teach for the 2015–2016 academic school year after teaching at SSU for the previous two years. (Doc. 35, p. 87.) The Court thus finds that Plaintiff has established this element of his prima facie case only to the extent that his claim is based on not receiving a new contract.

### B.    Comparator Evidence

To establish the final element of his prima facie disparate treatment claim, Plaintiff must show that "a similarly situated individual outside of [his] protected class . . . was treated differently than [him]." Knox v. Roper Pump Co., 957 F.3d 1237, 1247 (11th Cir. 2020) (citing Lewis, 918 F.3d at 1217). In the Eleventh Circuit, "a plaintiff proceeding under McDonnell Douglas must show that she and her comparators are similarly situated in all material respects." Lewis, 918 F.3d at 1226 (internal quotation marks omitted). Under this standard,

> a similarly situated comparator . . . will have engaged in the same basic conduct (or misconduct) as the plaintiff; will have been subject to the same employment policy, guideline, or rule as the plaintiff; will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff; and will share the plaintiff's employment or disciplinary history. In short, as its label indicates—"all material respects"—a valid comparison will not turn on formal labels, but rather on substantive likenesses. . . . [A] plaintiff and her comparators must be [so] sufficiently similar, in an objective sense, that they cannot reasonably be distinguished.

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit Court of Appeals handed down prior to October 1, 1981.

Id. at 1227 (internal citations and quotation marks omitted).

Here, Plaintiff puts forward three potential white comparators: Marlene Seidman, Christen Clougherty, and Nancy Souifi. (Doc. 42-2, pp. 4–5.) He argues that Silberg treated these comparators differently by giving them contracts and not asking them to resign. (Id. at pp. 3, 5.) However, a review of the record shows that these individuals were not similarly situated to Plaintiff. First, Plaintiff told Silberg on August 7, 2015 that he would not teach when classes began the following Monday unless he received a contract, and Silberg responded by asking for his resignation. (Doc. 35, pp. 148–49.) The record also shows that Seidman and Clougherty did not receive their contracts until September but, unlike Plaintiff, started teaching their assigned courses in August. (Doc. 38-4, pp. 110–11.) The record is silent on when Souifi received her contract, but Silberg testified that no one had received a contract at the time that Plaintiff gave his ultimatum. (Id. at p. 56.) Thus, Plaintiff cannot show that Silberg treated these three teachers differently by providing contracts to them in August. Further, there is no indication that any of the three proffered comparators told Silberg in August that they would not teach when classes began, making them even more different from Plaintiff. For these reasons, Seidman, Clougherty, and Souifi are not similarly situated in all material respects to Plaintiff and thus are not adequate comparators. Accordingly, Plaintiff fails to satisfy the fourth element for a prima facie disparate treatment claim. As a result, the Court **GRANTS** Silberg's Motion for Summary Judgment on Plaintiff's disparate treatment claim.[4]

---

[4] Even if the Court had found that Silberg assigning five courses to Plaintiff instead of four was an adverse employment action, Plaintiff's claim surrounding this action would still fail for lack of a similarly situated comparator. Plaintiff provides no evidence about Seidman, Clougherty, or Souifi's salary, and even admits in his deposition that he does not know how much any co-worker in his department made during the 2015–2016 academic year. (Doc. 35, p. 154) Thus, Plaintiff cannot show that Silberg required him to teach a fifth class for the same amount of pay that Seidman, Clougherty, and Soufi received for only teaching four.

## II.     Retaliation Claim

Plaintiff next asserts that Silberg retaliated against him in violation of Section 1981 "by divulging [his] personal information to other employees; remov[ing] [his] name from the course schedule and either g[iving] or offer[ing] promotions to white employees."  (Doc. 42-2, p. 6.) "Retaliation against an employee who engages in statutorily protected activity is barred under both Title VII and § 1981."  Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1257–58 (11th Cir. 2012).  To make out a Section 1981 retaliation claim based on circumstantial evidence, Plaintiff must proceed under a similar framework as his disparate treatment claim and show "that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events." [5]  Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1277 (11th Cir. 2008) (citation omitted).  If the plaintiff can make this showing, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions." Crawford v. City of Fairburn, 482 F.3d 1305, 1308 (11th Cir. 2007).  "If the defendant does so,

---

See, e.g., Washington v. United Parcel Serv., Inc., 567 F. App'x 749, 752 (11th Cir. 2014) ("[Plaintiff] failed to provide job information for four more comparators, and thus they also cannot be considered to be similarly situated due to a lack of sufficient information.") (citing Morris v. Emory Clinic, Inc., 402 F.3d 1076, 1083 (11th Cir. 2005)).  Similarly, Plaintiff's claim regarding Silberg's failure to offer him the "coordinator of Humanities" position or a leadership role in scheduling would also fail for lack of sufficient comparator evidence.  In his brief, Plaintiff asserts that Clougherty received this leadership position instead of him.  (Doc. 42-2, p. 5.)  According to the record, Clougherty had taught at SSU for five years, (doc. 38-4, p. 109), as opposed to Plaintiff's two years, (doc. 35, p. 38).  In addition, Clougherty had a doctorate, (doc. 38-4, p. 109), which Plaintiff did not have.  Because of these differences, Clougherty is not a suitable comparator.  See, e.g., Henley v. Turner Broad. Sys., Inc., 267 F. Supp. 3d 1341, 1356 (N.D. Ga. 2017) (comparator insufficient because plaintiff could not show "that his comparators 'had similar levels of experience or education,' had 'similar levels of seniority,' or received similar performance evaluations") (quoting Cooper v. S. Co., 390 F.3d 695, 741, 743, 745 (11th Cir. 2004), overruled on other grounds by Ash v. Tyson Foods, Inc., 546 U.S. 454, 457–58 (2006)).

[5] A plaintiff can also establish a retaliation claim through direct evidence.  See Merritt v. Dillard Paper Co., 120 F.3d 1181, 1189 (11th Cir. 1997).  Here, Silberg argues that there is no evidence of retaliation at all. (Doc. 38-1, pp. 10–12.)  Plaintiff's Response does not dispute that there is no direct evidence and only argues that he can establish circumstantial evidence of retaliation through his prima facie case.  (Doc. 42-2, pp. 5–6.)  Therefore, the Court will not address the issue of direct evidence any further.

the plaintiff must show that the reasons the defendant gave were pretextual." Shannon v. Bellsouth Telecomm., Inc., 292 F.3d 712, 715 (11th Cir. 2002). Silberg argues that Plaintiff cannot establish the third element. (Doc. 38-1, p. 10; doc. 45, p. 7.) The Court will examine whether Plaintiff can establish his prima facie case and then look to whether Silberg had a legitimate, nondiscriminatory reason for his actions.

### A.    Statutorily Protected Activity

The Court first turns to whether Plaintiff engaged in a statutorily protected activity. "A plaintiff engages in statutorily protected activity when [he] opposes an employment practice that [he] has a good faith, reasonable basis to believe is unlawful." Diamond v. Morris, Manning & Martin, LLP, 457 F. App'x 844, 846 (11th Cir. 2012) (per curiam) (citing Butler v. Ala. Dep't of Transp., 536 F.3d 1209, 1213 (11th Cir. 2008)). Here, Plaintiff provides evidence that he wrote a letter to Silberg which stated in part: "Positions and accommodations should not be tailored based upon race or gender. All employees within the department should be treated equally and given a fair opportunity to promote and excel. The lack of diverse faculty members is disheartening." (Doc. 35-15, p. 2.) As Plaintiff's claim can be decided on other grounds, the Court assumes without deciding that Plaintiff satisfies this element.

### B.    Adverse Employment Action

The second prima facie element requires Plaintiff show that he suffered an adverse employment action. As an initial matter, it is important to recognize that the "adverse action" test applied to retaliation claims is distinct from the one applied to disparate treatment claims. See Crawford v. Carroll, 529 F.3d 961, 974 n.14 (11th Cir. 2008) (noting that the two standards "are distinct and different"). A plaintiff bringing a retaliation claim "must show that a reasonable employee would have found the challenged action materially adverse enough to dissuade a

reasonable worker from making or supporting a charge of discrimination." Rutledge v. SunTrust Bank, 262 F. App'x 956, 958 (11th Cir. 2008) (per curiam) (citing Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68).

In his Response, Plaintiff points to three ways that Silberg retaliated against him.[6] (Doc. 42-2, p. 6.) First, Plaintiff says that Silberg "divulg[ed] personal information to other employees . . . ." (Id.) Plaintiff is not clear as to what specific information he claims Silberg told others; however, the only evidence the Court is able to glean from the record that could even arguably constitute divulging information about Plaintiff to others is Plaintiff's deposition testimony that Silberg spoke to other employees about his complaint. (Doc. 35, p. 195.) The Eleventh Circuit has not specifically addressed whether sharing such "personal information" about an employee constitutes an adverse employment action. However, the Eleventh Circuit has echoed the Supreme Court in cautioning that "'petty slights or minor annoyances'" are not adverse acts. Baroudi v. Sec'y, U.S. Dep't of Veterans Affairs, 616 F. App'x 899, 903 (11th Cir. 2015) (quoting Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68).

The Court is aware of only one instance where a district court in this Circuit has found that sharing some sort of personal information constituted an adverse employment action. In Booth v. Pasco County, Fla., the plaintiff filed an EEOC complaint concerning discrimination he had

---

[6] Plaintiff's Amended Complaint states that "[t]he University never responded to [Plaintiff's] grievance; nor referred the grievance to the Board of Review." (Doc. 20, p. 5.) Plaintiff's Response also mentions in passing that "Defendant never responded to" his complaint. (Doc. 42-2, p. 6.) Failing to respond or investigate a complaint is not itself an adverse employment action. See Entrekin v. City of Panama City, 376 F. App'x 987, 995 (11th Cir. 2010) (per curiam) ("The [defendant's] failure to sustain [plaintiff's] complaint against Leonard and failure to investigate [plaintiff's] complaint against Taylor are not adverse employment actions, because these actions were not taken against [plaintiff] herself."); Fincher v. Depository Tr. & Clearing Corp., 604 F.3d 712, 721 (2d Cir. 2010) ("[A]n employer's failure to investigate a complaint of discrimination cannot be considered an adverse employment action taken in retaliation for the filing of the same discrimination complaint."). Thus, to the extent Plaintiff asserts that Silberg's failure to investigate his complaint constituted retaliation, his claim fails.

allegedly experienced.  Booth v. Pasco Cty., Fla., 829 F. Supp. 2d 1180, 1186 (M.D. Fla. 2011).

The plaintiff's union then sent a memo to its members mentioning the plaintiff by name, describing

his EEOC complaint as "frivolous," and alerting the union members that their union dues might

increase due to litigation surrounding this complaint.  Id. at 1187.  The district court found this

showing was enough to survive summary judgment because "a reasonable juror could conclude

that the posting of the Legal Updates Memo would dissuade a reasonable worker from making a

charge of discrimination as it is entirely foreseeable that such a memo would provoke anger from

union members disinclined to pay for the defense of a frivolous lawsuit."  Id. at 1192.

        Unlike in Booth, Plaintiff provides no evidence concerning who Silberg talked to about his

complaint.  In addition, Plaintiff has not shown that Silberg disparaged the merits of his complaint

as the defendant did in Booth.  Finally, and most importantly, nothing in the record at all indicates

that Silberg warned any members of the SSU faculty that Plaintiff's complaint might financially

impact them.  Since there is no evidence that Silberg's conduct provoked any hostility toward

Plaintiff or even had the tendency to do so, the Court finds it significantly less severe than that in

Booth.  Accordingly, Plaintiff's evidence that Silberg shared personal information about his

complaint to others cannot satisfy the "materially adverse" element.  See, e.g., Saile v. N.Y. Dep't

of Motor Vehicles, No. 5:13–CV–1394 (ATB), 2015 WL 6962688, at *18 (N.D.N.Y. Nov. 9,

2015) (while "relating embarrassing personal information about plaintiff [was] inappropriate," it

did not constitute and adverse employment action).

        Plaintiff points to two other acts by Silberg that he asserts satisfy the second element of his

retaliation claim.  First, he points to evidence that Silberg removed his name from "the course

schedule."  (Doc. 42-1, p. 5; doc. 35, p. 197.)  Taking away an employee's work responsibilities

can constitute an adverse employment action.  See, e.g., Weston-Brown, 167 F. App'x at 82

(removing employee from her main business account was an adverse employment action). Plaintiff also argues that Silberg planned to create new positions specifically designed to promote certain white employees in the department.  (Doc. 42-2, p. 6; doc. 35, p. 198.)  Not receiving a promotion can suffice as an adverse employment action supporting a retaliation claim.  See Rives v. Lahood, 605 F. App'x 815, 819 (11th Cir. 2015) ("[Plaintiff] suffered an adverse employment action when he did not receive the promotion.").  Thus, the Court finds these two acts sufficient to satisfy the second element.

### C.     Causation

The third and final element of a retaliation claim is causation.  The Eleventh Circuit has "held that a plaintiff satisfies [the third element of a retaliation claim] if he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action."  Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999).  However, "[w]hen an employer makes a tentative decision before protected activity occurs, the fact that an employer proceeds with such a decision is not evidence of causation."  Saffold v. Special Counsel, Inc., 147 F. App'x 949, 951 (11th Cir. 2005) (citing Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001)).

Plaintiff's assertion that Silberg created new, better positions tailored toward white employees in retaliation against him fails this test.  First, Plaintiff provides no evidence Silberg actually had the power to create these positions, and even admits in his own deposition that he did not know if he could. (Doc. 135, p. 132.)  More importantly, in his own deposition, Plaintiff testified that he heard Silberg talk about his plan to create these new positions for other faculty members before Plaintiff sent the August 7th letter to Silberg.  (Id. at p. 217.)  Thus, since Silberg

had "previously contemplated" creating these positions, Plaintiff is unable to causally link them to the letter.  Breeden, 532 U.S. at 272.

While Silberg's failure to promote Plaintiff cannot satisfy the causation element, Plaintiff's remaining adverse employment action can.  Plaintiff testified that Silberg "immediately withdrew [Plaintiff's] name from course scheduling" after Plaintiff sent his letter.  (Doc. 35, p. 197.) "[W]hen temporal proximity is used to establish a causal connection, the proximity must be 'very close.'"  Criswell v. Intellirisk Mgmt. Corp., 286 F. App'x. 660, 664 (11th Cir. 2008) (quoting Breeden, 532 U.S. at 273)).  While Plaintiff does not provide the exact timing of when Silberg removed his name from the course schedule, a reasonable jury could find, based on Plaintiff's testimony that it was done "immediately," that it was in a short enough period of time to satisfy the causation element.  See Farley, 197 F.3d at 1337 (seven weeks sufficient to establish "a causal nexus for purposes of establishing a prima facie case").  Thus, Plaintiff has established a prima facie case that Silberg retaliated against him by removing his name from SSU's course schedule.

### D.    Silberg's Legitimate, Nondiscriminatory Reason

Once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for his action.  See Sullivan v. Nat'l R.R. Passenger Corp., 170 F.3d 1056, 1059 (11th Cir. 1999).  Silberg argues that he took the at-issue action affecting Plaintiff after Plaintiff informed him on August 7, 2015 that he was not planning to teach when classes began.  (Doc. 38-1, p. 11; doc. 38-4, pp. 53, 57.)  In his deposition, Plaintiff affirms that he told Silberg this.  (Doc. 35, p. 149.)  The record is clear that Plaintiff wrote his letter voicing his concerns about racial disparities at SSU to Silberg after this conversation. (Doc. 35-15.)  Thus, Silberg has provided evidence that he removed Plaintiff's name from course

18

schedules because Plaintiff told him that he was not going to teach; as such, Plaintiff has established a legitimate, nondiscriminatory reason for this action.

Under the McDonnell-Douglas framework, the burden now shifts back to Plaintiff to rebut Silberg's proffered reason. Plaintiff, however, has pointed to nothing in the record that does so. For this reason, Plaintiff's Section 1981 retaliation claim fails. Accordingly, the Court **GRANTS** Silberg's Motion for Summary Judgment as to this claim. (Doc. 38.)

## III.    Qualified Immunity

Finally, in his Motion for Summary Judgment, Silberg contends he is entitled to qualified immunity on Plaintiff's Section 1981 claims. (Doc. 38-1, pp. 14–18.) Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Bishop v. Avera, 177 F.3d 1233, 1235 (11th Cir. 1999).

To receive qualified immunity, government officials must first establish that they were acting within their discretionary authority during the events in question. Maddox v. Stephens, 727 F.3d 1109, 1120 (11th Cir. 2013). Discretionary authority includes all actions of a governmental official that "(1) were undertaken 'pursuant to the performance of his duties,' and (2) were 'within the scope of his authority.'" Dang ex rel. Dang v. Sheriff, Seminole Cty., 871 F.3d 1272, 1279 (11th Cir. 2017) (quoting Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988)). Here, Plaintiff does not contest this issue, and it appears that Silberg was acting within his discretionary authority. At all times relevant to this action, Silberg was the chair of the Fine Arts, Humanities, and Wellness Department at SSU, (doc. 38-4, p. 10), and his alleged actions (scheduling, asking Plaintiff for his resignation, promoting employees, deactivating an email account, and discussing work

complaints) fall within the administrative functions of that position.  See, e.g., Wilkerson v. Univ. of N. Tex. by and through Bd. of Regents, 878 F.3d 147, 158 (5th Cir. 2017) (granting qualified immunity to department chair after plaintiff sued her for not renewing his contract).

Once a defendant establishes that he was acting within the scope of his discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Dang, 871 F.3d at 1279 (quoting Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002)).  To make this showing, a plaintiff "must first prove that the facts alleged, construed in the light most favorable to [him], establish that a constitutional violation did occur."  Shaw v. City of Selma, 884 F.3d 1093, 1099 (11th Cir. 2018) (citing Smith v. LePage, 834 F.3d 1285, 1291 (11th Cir. 2016)); see also Saucier v. Katz, 533 U.S. 194, 200 (2001).  A plaintiff must also show that the law existing at the time the conduct occurred clearly established that the conduct violated the Constitution. Pearson v. Callahan, 555 U.S. 223, 232–36 (2009).

Here, Plaintiff does not respond to Silberg's argument that he is entitled to qualified immunity at all.  Plaintiff failed to respond to this argument despite Silberg's Reply specifically pointing out that Plaintiff had not addressed this issue.  (See doc. 45, p. 3.)  By not responding to this argument, Plaintiff has failed to meet his burden to show that Silberg is not entitled to qualified immunity.  See Maldonado v. Unnamed Defendant, 648 F. App'x 939, 955 (11th Cir. 2016) (per curiam) ("The judge did not err in placing the burden on [the plaintiff] to overcome the qualified-immunity defense.  [The plaintiff] never disputed the defendants were acting under their discretionary authority; therefore, the burden was on him to demonstrate the defendants violated his clearly established rights."); White v. Ala. Inst. for Deaf & Blind, No.: 1:16-CV-190-VEH, 2018 WL 1089879, at *13 (N.D. Ala. Feb. 28, 2018) (granting qualified immunity when plaintiff did not respond to defendant's argument).  An alternative conclusion would require the Court "to

do Plaintiff's counsel's work for him and manufacture arguments on behalf of Plaintiff.  Such an action would be inappropriate because 'the onus is on the parties to formulate arguments.'" <u>Jordan v. Randolph Cty. Schs.</u>, No. 4:08–CV–131 (CDL), 2009 WL 2391267, at *1 (M.D. Ga. July 31, 2009) (quoting <u>Resolution Tr. Corp. v. Dunmar Corp.</u>, 43 F.3d 587, 599 (11th Cir. 1995)). Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment on the alternative ground that he is entitled to qualified immunity.[7]

## IV.    Attorney's Fees

Plaintiff requests attorney's fees and expenses of litigation for his discrimination and retaliation claims.  (Doc. 20, p. 6.)  "In certain civil rights actions, including suits under 42 U.S.C. §§ 1981 and 1983, 'the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.'" <u>Virdi v. Dekalb Cty. Sch. Dist.</u>, 216 F. App'x 867, 869 (11th Cir. 2007) (per curiam) (citing 42 U.S.C. § 1988(b)).  Because none of his claims survive summary judgment, Plaintiff is not and cannot be a prevailing party and his claim for attorney's fees thus fails.  Accordingly, the Court **GRANTS** summary judgment in favor of Silberg on this claim.  (Doc. 38.)

## V.    Punitive Damages

Plaintiff also seeks punitive damages.  (Doc. 20, p. 7.)  "The Supreme Court has directed that, for the issue of punitive damages to reach the jury in a section 1981 case, the plaintiff must come forward with substantial evidence that the employer acted with actual malice or reckless indifference to his federally protected rights." <u>Miller v. Kenworth of Dothan, Inc.</u>, 277 F.3d 1269, 1280 (11th Cir. 2002) (citing <u>Kolstad v. Am. Dental Ass'n</u>, 527 U.S. 526, 536–37 (1999)).  For the reasons discussed above, Plaintiff's claims alleging disparate treatment and retaliation fail as

---

[7]  Silberg is furthered entitled to qualified immunity because, for the reasons explained in Discussion Sections I and II, <u>supra,</u> Plaintiff has not established that Silberg violated his constitutional rights.

a matter of law.  Thus, Plaintiff cannot show that Silberg acted with actual malice or reckless indifference and therefore cannot show he is entitled to punitive damages.  Accordingly, the Court **GRANTS** Silberg's Motion for Summary Judgment on this claim.  (Doc. 38.)

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant Nicholas Silberg's Motion for Summary Judgment. (Doc. 38.)  The Court **DIRECTS** the Clerk of Court to enter summary judgment in favor of Defendant and to **CLOSE** this case.

**SO ORDERED**, this 28th day of August, 2020.

_____

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA